IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:22-cv-00581-MR

| | |
|---|---|
| TYRONE LAMARK MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| DEVONTE PETERSON, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on a Motion for Summary Judgment filed by Defendants Devonte Peterson, Tcheno Snell, and Freddie Vitela.[1] [Doc. 23].

**I.    BACKGROUND**

The pro se Plaintiff Tyrone Lamark Miller filed this action pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred at the Mecklenburg County Detention Center ("MCDC") where he is a pretrial detainee. [See Doc. 1: Complaint]. The Plaintiff's unverified Complaint passed initial review against Defendants Peterson, Snell, and Vitela for the use of excessive force and failure to intervene, and the Court liberally

---

[1] "D. Peterson," "T. Snell," and "Vitale" in the Complaint. [Doc. 1 at 1].

construed the Complaint as asserting claims for assault and battery under North Carolina law, over which it exercised supplemental jurisdiction. [Doc. 10: Order on Initial Review]. The Plaintiff seeks a declaratory judgment, compensatory and punitive damages, and any additional relief the Court deems just, proper, and equitable. [Id. at 6]. Defendants Snell and Peterson asserted counterclaims for assault against the Plaintiff. [Docs. 12, 15].

The Defendants filed the instant Motion for Summary Judgment and supporting materials. [Doc. 23: MSJ]. Defendants Snell and Peterson stipulate to the dismissal of their counterclaims if the Court grants this motion for summary judgment. [Doc. 24: MSJ Memo. at 1-2]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 27: Roseboro Order]. The Plaintiff was granted an extension of time to respond to the Motion for Summary Judgment; however, no response has been filed and the time to do so has expired. The Defendants' Motion for Summary Judgment is ripe for disposition.

2

Case 3:22-cv-00581-MR   Document 30   Filed 05/15/24   Page 2 of 13

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

3

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

4

no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The forecast of evidence viewed in the light most favorable to the Plaintiff shows the following.

The Plaintiff arrived at MCDC on March 4, 2019. [Doc. 24-3: Depo.[2] at 2]. On the morning of June 11, 2022, the Plaintiff was in the "hole" for a disciplinary action. [<u>Id.</u> at 10]. He was asked several times to leave his cell for a shakedown search. [<u>Id.</u> at 5, 9-10]. The Plaintiff was supposed to put his hands through the trap door for cuffing and exit his cell. [<u>Id.</u> at 6, 9]. The Plaintiff had taken medication, which makes him "extremely drowsy," the previous night, and he "didn't agree" with the shakedown. [<u>Id.</u> at 4-5, 14]. The Plaintiff "probably" said something to the effect of "You're going to have to come in here and get me…" and he requested a "ranking officer." [<u>Id.</u> at

---

[2] This exhibit contains excerpts of the Plaintiff's deposition. [<u>See</u> Doc. 24-3 at 1].

6-7, 12-14]. A sergeant[3] told the Plaintiff that a supervisor does not need a reason to search a cell, and that the Plaintiff could not refuse. [Id. at 14]. The Plaintiff continued to refuse. [Id. at 14-15]. Sergeant Vitela asked DART[4] Officers Peterson and Snell to retrieve the Plaintiff from his cell. [Id. at 6, 15]. The Plaintiff felt that his life was in danger because he had seen Officer Peterson attack someone the previous day, and because Plaintiff had a verbal altercation with Officer Snell in 2007 or 2008. [Id. at 8, 28].

The Plaintiff was standing at the back of his cell in a fighting stance when Officer Peterson entered the cell, and the Plaintiff began throwing punches when Peterson approached him.[5] [Doc. 24-4: Snell Decl. at ¶ 6]. The Plaintiff and Peterson fell onto the metal bed frame. Doc. 24-3: Depo.

---

[3] It is unclear whether this refers to Sergeant Vitela or another sergeant.

[4] DART (Direct Action Response Team) officers respond to disturbance calls involving "high conflict residents." [Doc. 24-4: Snell Decl. at ¶ 1].

[5] The Plaintiff admitted in his deposition that "I tried to hit Peterson." [Doc. 24-3: Depo. at 23]. In another portion of his deposition, however, the Plaintiff testified that his hands were at his sides when Peterson entered his cell and that it was Peterson who began throwing punches. [Id. at 12, 16-18]. "A genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984); see Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); Bouchat v. Bal. Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (noting that it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial") (citation and quotation marks omitted).

6

at 19]. Peterson said "stop resisting" while he sat on the Plaintiff and continued to swing at him. [Id. at 20]. The Plaintiff tried to grab Peterson's taser from his utility belt to "defend [him]self." [Doc. 24-4: Snell Decl. at ¶ 9; Doc. 24-3: Depo. at 23-24].

After the Plaintiff reached for Peterson's taser, Officer Snell "ran in and started hitting [Plaintiff]," grabbed the Plaintiff's hand, and said "[s]top resisting…." [Doc. 24-3: Depo. at ¶¶ 22, 24, 25; Doc. 24-4: Snell Decl. at ¶ 9; Doc. 24-3: Depo. at 25]. Officer Snell handcuffed the Plaintiff, removed him from the cell, and escorted him to medical. [Doc. 24-4: Snell Decl. at ¶ 10; Doc. 24-3: Depo. at 23].

The Plaintiff was transported to the hospital for stitches. [Doc. 24-4: Snell Decl. at ¶ 11, ¶ 13]. The Plaintiff's wrist and cheek were broken; he has white flares due to glaucoma in his right eye; the Plaintiff has to wear a brace from time to time; and cold causes him pain due to his arthritis. [Doc. 24-3: Depo. at 22, 26].

After the incident, Sergeant Vitela came to the Plaintiff's room and had the Plaintiff sign a use-of-force packet. [Id. at 27].

IV. DISCUSSION

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490

7

U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. at 397. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. 396). A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 540, (1979). Considerations that may bear on the reasonableness or unreasonableness of the force used include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397 (citing Graham, 490 U.S. at 396).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff appears to have withdrawn his excessive force and failure to intervene claims against Sergeant Vitela. [Doc. 24-3: Depo. at 7]. Even if he had not done so, summary judgment would be granted for Sergeant Vitela because there is no forecast of evidence that Sergeant Vitela used any force against the Plaintiff, or failed to intervene in a violation of the Plaintiff's rights. The forecast of evidence demonstrates only that Sergeant Vitela ordered officers to remove the Plaintiff from his cell when he refused orders, and that he gave the Plaintiff a use-of-force packet after the incident. Accordingly, summary judgment will be granted in Sergeant Vitela's favor.

As to Defendants Peterson and Snell, the forecast of evidence demonstrates that the Plaintiff, who was under the influence of medication,

refused repeated verbal orders to submit to cuffs and exit his cell because he did not want it searched; that when Officer Peterson entered the Plaintiff's cell, the Plaintiff adopted a fighting stance and swung at Peterson; that the two fell on a bed frame and physically struggled; that when Plaintiff reached for Peterson's taser, Officer Snell entered the cell and engaged the Plaintiff physically; that the Plaintiff was eventually subdued; and that the Plaintiff sustained injuries.

Viewing the forecast of evidence in the light most favorable to the Plaintiff, there is no genuine issue of material fact as to whether Defendants Peterson and Snell used excessive force against the Plaintiff or failed to intervene in a violation of Plaintiff's rights. Force was needed because the Plaintiff repeatedly refused officers' verbal orders because he disagreed with them. Officers tried to temper the amount of force used by granting him repeated opportunities to comply to verbal orders, and by initially sending a single officer into the cell to retrieve him. The Plaintiff posed a serious and immediate threat to officer safety when he assumed a fighting stance and swung at Peterson, and that threat escalated when the Plaintiff grabbed for Peterson's taser. Although the Plaintiff appears to have sustained injuries that were more than *de minimis*, this alone does not establish that excessive force was used. Rather, the forecast of evidence demonstrates that officers

10

Case 3:22-cv-00581-MR    Document 30    Filed 05/15/24    Page 10 of 13

acted reasonably when responding to the Plaintiff's verbal, and dangerous physical resistance. See Kingsley, 576 U.S. at 397. The Plaintiff has thus failed to demonstrate the existence of a genuine dispute of material fact that Officer Snell used excessive force or failed to intervene and the Defendants will be granted summary judgment on these grounds.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). Here, because Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, they are entitled to qualified immunity on this ground as well.

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims that were based on the same incidents as § 1983 claims that had passed initial review. [See Doc. 10 at 5, n.3: Order on Initial Review]. Because the § 1983 claims have been dismissed against the Defendants, the assault and battery claims against them are likewise dismissed. See, e.g., Njang v. Montgomery Cnty., Maryland, 279 F. App'x 209, 216 (4th Cir. 2008) (recognizing that "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence"); Wilcoxson v. Painter, 2016 WL 866327, at *10 (E.D.N.C. March 3, 2016) ("[w]here a law enforcement officer's use of force was reasonable for the purposes of finding qualified immunity to a § 1983 excessive force claim, it is fatal to the Plaintiff's state law tort claims.").

Because the Defendants' Motion for Summary Judgment is being granted, the Defendants' counterclaims will be dismissed pursuant to their stipulation. [Doc. 24: MSJ Memo. at 1-2].

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, the Defendants' counterclaims are dismissed pursuant to their stipulation, and this action is dismissed with prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. The Defendants' Motion for Summary Judgment [Doc. 23] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Defendants' counterclaims are **DISMISSED**.

The Clerk is respectfully directed to close this civil action.

**IT IS SO ORDERED.**

Signed: May 15, 2024

Martin Reidinger
Chief United States District Judge